UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CHRISTOPHER WARE, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF GWENDOLYN WRIGHT | CIVIL ACTION NO. 22-5332 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| IRVING PLACE ASSOCIATES, LP | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss filed by the defendant, Irving Place Associates, LP ("Irving Place" or "the Defendant") d/b/a Highland Place Rehab & Nursing Center ("Highland"). See Record Document 16. Irving Place contends that the Louisiana Emergency Health Powers Act ("LHEPA") precludes liability for healthcare providers for any alleged damages incurred during a public health emergency, and Plaintiff, Christopher Ware ("Ware"), Individually and on behalf of the Estate of Gwendolyn Wright's ("Wright") allegations do not rise to the level of gross negligence or willful misconduct. See id. Ware opposes the motion. See Record Document 18. For the reasons that follow, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

On November 19, 2021, Wright, Ware's mother, became a resident at Highland. See Record Document 11 (First Amended Complaint) at 2. At or about 3:00 p.m. that day, Wright was observed by staff at Highland as having an altered mental status and low blood oxygen. Staff at Highland allegedly waited until almost 5:00 p.m. on November 20, 2021, to request care by calling an ambulance to take Wright to the emergency room.

See id. On or about November 22, 2021, Ware, on behalf of Wright, formally signed a contract for service with Highland. See id. The contract purportedly required Highland to provide Wright with "around-the-clock, one-on-one services." Id. Ware alleges that Wright was left unattended for several hours on November 29, 2021. See id. At about 9:18 a.m. on November 29, 2021, Wright was discovered to have breathing difficulty, with alternating periods of apnea, and tachypnea. See Record Document 11 at 2. Wright was again taken to the emergency room. See id. Wright eventually died on December 9, 2021, as Highland allegedly failed or refused to provide the appropriate standard of care while Wright was at its facility. See id.

On September 24, 2022, Ware filed the instant wrongful death and survival action due to the death of Wright. See Record Document 1. Ware asserts claims for Medical Malpractice and Breach of Contract, seeking actual damages, prejudgment and post-judgment interest, statutory damages and interest, attorney fees, court fees, and all other relief to which Ware is entitled. See Record Document 11 at 4. Irving Place filed its Motion to Dismiss on November 21, 2022. See Record Document 16.

**LAW AND ANALYSIS**

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." Twombly, 550 U.S. at 555–56. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos Cty., Tex., 981 F.2d 237, 243 (5th Cir. 1993). Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See id. at 678–79. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

Irving Place seeks dismissal of Ware's first amended complaint (Record Document 11) under Rule 12(b)(6) because he fails to state a claim upon which relief can be granted. Specifically, Irving Place submits that Ware's claims should be dismissed because he failed to allege gross negligence or willful misconduct as required pursuant to the LHEPA. See Record Document 16-1 at 2. It states that Highland shows that all times it provided Wright with appropriate care, within the applicable standard of care. See id. Irving Place further states that Ware's claims amount to nothing more than mere allegations of medical malpractice, insufficient to state a cause of action per the LHEPA. See id. at 3. Moreover,

3

a review of the contract referred to by Ware in the first amended complaint shows that at no time did Highland agree to provide one-on-one services as alleged. See id.

### A.     Louisiana Emergency Health Powers Act

On March 11, 2020, due to the COVID-19 pandemic, former Governor John Bel Edwards declared a statewide public health emergency, triggering the application of Section 771. See Baele v. University Healthcare System, L.C., No. 23-1558, 2024 WL 3105009 (E.D. La. June 24, 2024) (citing Proclamation Number 25 JBE 2020; Sebble ex rel. Estate of Brown v. St. Luke's #2, LLC, 379 So.3d 615, 621 (La. 2023)). LA. R.S. § 29:771 provides that "[d]uring a state of public health emergency, any health care providers shall not be civilly liable for causing the death of, or, injury to, any person or damage to any property except in the event of gross negligence or willful misconduct."

In defining the parameters of gross negligence and willful misconduct, the Louisiana Supreme Court has explained:

> Louisiana courts have frequently addressed the concept of gross negligence. Gross negligence has been defined as the want of even slight care and diligence and the want of that diligence which even careless men are accustomed to exercise. Gross negligence has also been termed the entire absence of care and the utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others. Additionally, gross negligence has been described as an extreme departure from ordinary care or the want of even scant care. There is often no clear distinction between such [willful, wanton, or reckless] conduct and gross negligence, and the two have tended to merge and take on the same meaning. Gross negligence, therefore, has a well-defined legal meaning distinctly separate, and different, from ordinary negligence.

See Baele, 2024 WL 3105009 at *3 (citing Ambrose v. New Orleans Police Dep't Ambulance Serv., 639 So.2d 216, 217-18 (La. 1994) (internal quotations and citations)).

Gross negligence and willful misconduct "apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended." Id. (citing McQuirter v. State, 308 So.3d 285, 285 (La. 2021) (internal quotations and citations omitted)).

In Baele, the Court in the Eastern District of Louisiana found that the plaintiff failed to allege facts that gave rise to gross negligence or willful conduct. See id. The Court stated that none of the plaintiff's allegations showed that the defendant "actively desired or knew the results of their actions would result in harm," and thus the plaintiff's claims sounded in medical malpractice under the typical standard, not gross negligence or willful misconduct. Id. (citing Morrow v. La. Med. Mut. Ins. Co., 361 So.3d 986, 990 (La. 1st Cir. 2023) (allegations of defendants' "failure to properly assess, evaluate, diagnose, monitor, manage, and treat" plaintiff did not constitute gross negligence or willful misconduct absent facts alleging defendants "consciously desired the physical result of their acts or knew that the result was substantially certain to follow from their conduct".)).

Here, Ware asserts that the behaviors of the Defendant fall within one or more of the descriptions of "gross negligence" because there was an "entire absence of care" for an extended period despite a known medical situation that required immediate care, which constitutes an "extreme departure from ordinary care." Record Document 18 at 3. Ware argues that at the time Defendant eventually called an ambulance, the damages caused by its entire absence of care (i.e., gross negligence) was already done. See id. Further, Ware states that he pleaded willful misconduct in that "[d]efendant acted willfully or with gross negligence because it had actual knowledge of Ms. Wright's need for

5

immediate care and intentionally failed or refused monitor and provide treatment to Ms. Wright." Id. at 3-4.

Accepting the facts alleged as true, none of these allegations show Defendants "actively desired or knew the results of their actions would result in harm." Baele, 2024 WL 3105009 at *3. Thus, the Court finds that Ware's claims regarding any medical malpractice or negligence are **DISMISSED**.

B.  **Breach of Contract**

Irving Place argues that according to the language of the contract between Ware and Highland, Highland merely agreed to "assist Resident with procuring" additional one-on-one care. Record Document 16 at 8. Thus, there is no breach of contract and Ware has not stated a claim under the contract for which relief can be granted. See id. Ware argues that the Defendant neither provided the "around- the-clock, one-on-one services" itself nor helped to seek the services from a third party. Record Document 18 at 4. Thus, Ware states that the Defendant failed to fulfill its contractual obligation even under its own interpretation of the contract. See id. at 5.

Under Louisiana law, the essential elements of a breach of contract claim are defined as (1) the obligor's undertaking of an obligation to perform, (2) the obligor's failure to perform the obligation (the breach), and (3) resulting damages to the obligee. See Boudreaux v. Flagstar Bank FSB, 623 Fed. App'x 235, 237 (5th Cir. 2015) (internal citations omitted).

Ware seeks leave to amend his complaint to assert that the Defendant neither provided the "around-the-clock, one-on-one services for an additional charge" mentioned in the contract, nor aided in the acquisition of such services. Id. at 4 n.1. The Fifth Circuit

6

has reiterated that, "a court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." Byrd v. Bates, 220 F.2d 480, 482 (5th Cir. 1955). Thus, Ware's request for leave to amend its complaint is **GRANTED** to allow Ware to plead with more particularity any additional allegations that may satisfy the requirements for breach of contract. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Thus, for the above reasons, Defendants' Motion to Dismiss is **DENIED** as to the Breach of Contract claim at this time.

## CONCLUSION

Accordingly, the Irving Place's Motion to Dismiss (Record Document 16) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to the medical malpractice and general negligence claims, and thus, such claims are **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to the breach of contract claim. Further, Ware's request for leave to amend its complaint is **GRANTED** with respect to the breach of contract claim.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 3rd day of September, 2024.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE