UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CHRISTOPHER WARE | CIVIL ACTION NO. 22-5332 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| IRVING PLACE ASSOCIATES LP | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant Irving Place Associates, LP d/b/a Highland Place Rehab & Nursing Center's ("Defendant") Motion to Dismiss for Failure to State a Claim. See Record Document 24. Plaintiff Christopher Ware ("Ware") opposed. See Record Document 29. Defendant replied. See Record Document 31. For the reasons stated below, Defendant's Motion to Dismiss (Record Document 24) is **GRANTED**, and Ware's breach of contract claim is **DISMISSED WITH PREJUDICE**.

**BACKGROUND**

On or about November 19, 2021, Gwendolyn Wright ("Ms. Wright"), Ware's mother, became a resident at Defendant's nursing facility. See Record Document 21 at ¶ 5. At or about 3:00pm that same day, Ms. Wright was observed by Defendant's staff as having an altered mental status and low blood oxygen. See id. Ware asserts that immediate action was required because hypoxia (low oxygen) would likely cause or worsen damage to the brain. See id. Ware alleges the appropriate course of action would have been for the staff to attempt to stabilize Ms. Wright, and if they were unable to do so, call for a higher level of care. See id. Instead, Ware claims the staff made no attempt to provide appropriate

care and waited until almost 5:00pm the next day to request care by calling an ambulance to take Ms. Wright to the emergency room. See id.

On or about November 22, 2022, Ware, on behalf of Ms. Wright, formally signed the contract for service with Defendant. See id. at ¶ 6. The contract required Defendant to provide Ms. Wright with "around-the-clock, one-on-one services." See id. Ware alleges that at the time Defendant agreed to provide this level of service, it had no intention of actually providing the service because it believed it would be immune to liability by virtue of the Louisiana Emergency Health Powers Act ("LHEPA"). See id.

Additionally, Ware asserts that Defendant intentionally failed or refused to provide "around-the-clock, one-on-one services," as represented in the contract. See id. at ¶ 7. As a result, he claims that Ms. Wright was left unattended on November 29, 2021 for several hours. See id. At about 9:18am on November 29, 2021, Ms. Wright was discovered to have breathing difficulty, with alternating periods of apnea and tachypnea. See id. She was again rushed to the emergency room. See id.

Ms. Wright died on December 9, 2021. See id. at ¶ 8. Ware alleges her death occurred because Defendant failed to or refused to provide the appropriate standard of care while Ms. Wright was a resident in Defendant's facility. See id. In his Second Amended Complaint, Ware asserts two claims: (1) medical malpractice and (2) breach of contract. See id. at ¶¶ 9–18.

On September 3, 2024, this Court entered a Memorandum Ruling and Order addressing Defendant's previous motion to dismiss. See Record Documents 19 & 20. The Court granted the motion with respect to Ware's medical malpractice and general

negligence claims, and thus, those claims were dismissed with prejudice. See Record Document 20. The Court denied the motion as to the breach of contract claim. See id. The Court granted Ware's request for leave to amend his complaint only with respect to the breach of contract claim. See id. On September 9, 2024, Ware filed his Second Amended Complaint and reasserted his claims for medical malpractice and breach of contract. See Record Document 21.

## LAW AND ANALYSIS

**I. Pleading and Dismissal Standards.**

Federal Rule of Civil Procedure 8(a)(2) governs the requirements for pleadings that state a claim for relief and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go

outside the pleadings." Colle v. Brazos Cnty., Tex., 981 F. 2d 237, 243 (5th Cir. 1993). Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standards to survive such a motion. See id. at 678–79, 1949–50. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

**II. LHEPA.**

On March 11, 2020, due to the COVID-19 pandemic, former Governor John Bel Edwards declared a statewide public health emergency, triggering the application of Section 771. See Baele v. Univ. Healthcare Sys., L.L.C., No. 23-1558, 2024 WL 3105009 (E.D. La. June 24, 2024) (citing Proclamation Number 25 JBE 2020; Sebble on Behalf of Estate of Brown v. St. Luke's #2, LLC, 2023-00483 (La. 10/20/23), 379 So. 3d 615, 621). Louisiana Revised Statutes § 29:771 provides that "[d]uring a state of public health emergency, any health care providers shall not be civilly liable for causing the death of, or, injury to, any person or damage to any property except in the event of gross negligence or willful misconduct."

In defining the parameters of gross negligence and willful misconduct, the Louisiana Supreme Court has explained:

> Louisiana courts have frequently addressed the concept of gross negligence. Gross negligence has been defined as the want of even slight care and diligence and the want of that diligence which even careless men are accustomed to

4

>exercise. Gross negligence has also been termed the entire absence of care and the utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others. Additionally, gross negligence has been described as an extreme departure from ordinary care or the want of even scant care. There is often no clear distinction between such [willful, wanton, or reckless] conduct and gross negligence, and the two have tended to merge and take on the same meaning. Gross negligence, therefore, has a well-defined legal meaning distinctly separate, and different, from ordinary negligence.

See Baele, 2024 WL 3105009 at *3 (citing Ambrose v. New Orleans Police Dep't Ambulance Serv., 93-3099 (La. 7/5/94), 639 So. 2d 216, 219–20 (internal quotations and citations omitted)). Gross negligence and willful misconduct "apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended." Id. (citing McQuirter v. State, 2020-01192 (La. 1/12/21), 308 So. 3d 285 (internal quotations and citations omitted)).

In Baele, the district court found that the plaintiff failed to allege facts that gave rise to gross negligence or willful conduct. See id. The court stated that none of the plaintiff's allegations showed that the defendant "actively desired or knew the results of their actions would result in harm," and thus, the plaintiff's claims sounded in medical malpractice under the typical standard, not gross negligence or willful misconduct. Id. (citing Morrow v. La. Med. Mut. Ins. Co., 2022-1006 (La. App. 1 Cir. 2/24/23), 361 So. 3d 986, 990 (Allegations of defendants' "failure to properly assess, evaluate, diagnose, monitor, manage, and treat" plaintiff did not constitute gross negligence or willful misconduct absent facts alleging defendants "consciously desired the physical result of their acts or knew that the result was substantially certain to follow from their conduct.")).

**III. Summary of Arguments.**

Defendant asserts that the LHEPA precludes liability for healthcare providers for any alleged damages incurred during a public health emergency. See Record Document 24-1 at 1. It contends that the only exception is for the gross negligence or willful misconduct of the provider. See id. Defendant submits that Ware's allegations do not rise to the level of gross negligence or willful misconduct. See id.

Defendant provides that this Court has already dismissed Ware's medical malpractice claims under the LHEPA with prejudice, so his reasserted medical malpractice claims should be dismissed. See id. at 4. Additionally, Defendant argues that his remaining claims for breach of contract are subject to the gross negligence and willful misconduct standard under the LHEPA, and because his claims do not meet that standard, they should be dismissed. See id. at 5. Defendant asserts that the statutory immunity provided by the LHEPA is not limited to tort actions according to the text of the statute. See id. Defendant is a skilled nursing facility that fits under the definition of a "health care provider" pursuant to the LHEPA. See id. Defendant submits that since Ware's claims are against a health care provider during a state of public health emergency, he must assert sufficient allegations to constitute a claim for gross or willful misconduct. See id. at 5–6. Defendant argues Ware's conclusory allegations relating to breach of contract are essentially the same conclusory allegations this Court previously held did not constitute gross negligence or willful misconduct. See id. at 9.

Ware opposes, asserting that he has pled or is capable of pleading sufficient facts to demonstrate that Defendant's actions constituted gross negligence or willful misconduct. See Record Document 29 at 1. He argues that because this Court dismissed

his gross negligence claims based on Baele, an judicial opinion issued after the relevant pleadings and motions were filed, he requests leave to file a third amended complaint to allege that Defendant knew harm would result from failing to address Ms. Wright's low oxygen levels. See id.

Ware contends that while he does not explicitly state that Defendant knew that its actions would result in harm, the immediate and lasting consequences of low oxygen levels are so widely understood, even outside the medical field, that it is reasonable for the Court to infer that Defendant's staff knew harm would result from failing to address Ms. Wright's low oxygen. See id. at 4. He submits that such an inference is appropriate because matters related to Defendant's mental state may be generally alleged under Federal Rule of Civil Procedure 9(b). See id.

Additionally, Ware asserts that he has stated a claim for relief on his breach of contract claim. See id. He advances that his allegations demonstrate how Defendant's actions align with traditional definitions of gross negligence or willful conduct. See id. Should the Court apply the standard from Baele, he again requests permission to amend his Complaint. See id.

Defendant responds, reiterating that the Court should dismiss the reassertion of Ware's negligence and malpractice claims. See Record Document 31 at 1. To the extent that Ware is attempting to have the Court reconsider its ruling on the dismissal of those claims, Defendant contends that his opposition does not constitute a Rule 54(b) motion. See id. at 2. Even if it constituted such a motion, Defendant asserts that Ware is not entitled to reconsideration of issues the Court has already disposed of. See id.

Additionally, Defendant points out that the deadline has passed for Ware to ask this Court to alter or amend its judgment. See id. at 6.

Defendant also submits that the standard for gross negligence and willful misconduct has been an extremely high standard long before Baele, as Defendant argued when it filed its previous motion to dismiss Ware's First Amended Complaint. See id. at 3. Defendant reasserts that Ware has only pled conclusory allegations similar to the claims this Court previously held were not sufficient to plead gross negligence and willful misconduct. See id. at 5.

**IV. Analysis.**

The Court agrees with Defendant that Ware cannot reassert his medical malpractice and negligence claims because the Court has previously dismissed those claims with prejudice. See Wooderts v. Summers, No. 12-196, 2012 WL 6592620, at *1 (N.D. Tex. Dec. 18, 2012). In its previous Memorandum Ruling and Order, the Court only allowed Ware to amend his Complaint with respect to the breach of contract claim. See Record Documents 19 & 20. Specifically, the Court granted leave for Ware to assert that Defendant neither provided the "around-the-clock, one-on-one services for an additional charge" mentioned in the contract, nor aided in the acquisition of such services. See Record Document 19 at 6. Thus, his medical malpractice and negligence claims should not have been reasserted, and the Court will not consider those claims. The Court will only consider the breach of contract claim.

In his Second Amended Complaint, Ware provides some additional allegations with respect to the consequences Ms. Wright endured because of Defendant's actions

and/or inactions. See Record Document 21 at ¶ 15–17. However, Ware does not provide any additional allegations with respect to gross negligence or willful conduct for the breach of contract claim. See id. at ¶ 18. Significantly, he does not dispute that the LHEPA's immunity applies to a breach of contract claim. Rather, Ware mainly contests that fact that he was not notified that the standard in Baele would be applied to the instant case.

The standard for gross negligence and willful misconduct should not come as a surprise to Ware. Even though Baele is a more recent case, the district court in Baele pulled its reasoning from older cases decided by the Louisiana Supreme Court. See Ambrose, 639 So. 2d at 219–20; see also McQuirter, 308 So. 3d at 285. The higher standard for gross negligence and willful misconduct is not new. At the time Ware filed his Second Amended Complaint, he was aware that this Court would be applying the standard discussed in Baele. His argument that he was not notified does not hold much weight because the Court's previous Memorandum Ruling and Order were published on September 3, 2024, and he filed his Second Amended Complaint on September 9, 2024. See Record Documents 19, 20, & 21. Ware should have known of the applicable standard for gross negligence and willful misconduct. His repeated failure to cure this deficiency by previous amendment supports the Court's discretionary decision to deny Ware leave to file a Third Amended Complaint. See Porter v. Roberts, No. 24-0786, 2024 WL 5159288, at *1 (E.D. La. Dec. 18, 2024); see also Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).

It is undisputed that La. R.S. § 29:771 is applicable to the instant case. Since Ware has failed to sufficiently plead with more specificity Defendant's gross negligence or willful

9

misconduct, the LHEPA's immunity shields Defendant from liability. Beyond mere legal conclusions and speculation, his Second Amended Complaint fails to demonstrate how Defendant acted grossly negligent or willfully failed to provide Ms. Wright with the appropriate level of care. Therefore, Defendant's Motion to Dismiss (Record Document 24) is **GRANTED**, and Ware's breach of contract claim is **DISMISSED WITH PREJUDICE**.

## CONCLUSION

For the reasons stated above,

Defendant's Motion to Dismiss (Record Document 24) is **GRANTED**. Thus, Ware's breach of contract claim is **DISMISSED WITH PREJUDICE**.

A Judgment consistent with this Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 26th day of March, 2025.

_____
UNITED STATES DISTRICT COURT JUDGE